RECEIVED
IN LAKE CHARLES, LA.
OCT 21 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CAROL J. VINCENT, | * | CIVIL ACTION NO. 2:13-CV-189 |
| Plaintiff, | * | |
| v. | * | JUDGE MINALDI |
| CITY OF SULPHUR, ET AL., | * | |
| Defendants, | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment Based on Qualified Immunity [Doc. 23], filed by the City of Sulphur; Lewis Coats, Chief of Police for the City of Sulphur; Officer Chester Gremillion; and Officer Glenn Martin ("defendants"), to which the *pro se*[1] plaintiff has filed an Opposition [Doc. 25], and the defendants have filed a Reply [Doc. 26]. At the request of the court, the defendants have filed the Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment Based on Qualified Immunity Regarding the First Amendment Claims [Doc. 31], and the plaintiff has also filed Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment Based on Qualified Immunity Regarding Plaintiff's First Amendment Claims [Doc. 34]. For the following reasons, the Motion [Doc. 23] is hereby **GRANTED, IN PART,** and **DENIED, IN PART,** as to the plaintiff's claims under the First Amendment.

---

[1] The Fifth Circuit has stated that the briefs of *pro se* litigants are entitled both to a liberal construction and the application of less stringent standards in interpreting such litigants' arguments as opposed to briefs of those litigants represented by counsel. *Harris v. Barnhart*, 204 Fed. Appx. 447, 448 (5th Cir. 2006) (citing *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995)). *See also Taylor v. Comm'r*, 350 Fed. Appx. 913, 915 (5th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

1

## FACTS & PROCEDURAL HISTORY[2]

On August 8, 2012, the plaintiff, Carol J. Vincent ("Vincent"), was questioned by police concerning an allegation that he had threatened to get a gun and kill Mayor Christopher Duncan and city councilman Mike Koonce.[3] Vincent denied making such a statement.[4] On August 9, 2012, Vincent was pulled over in a traffic stop by Officer Chester Gremillion, who informed Vincent of a "no trespass order" against him[5] Officer Chester Gremillion also informed Vincent that he was henceforth forbidden to set forth upon all public property in the City of Sulphur.[6]

The Official Notification of Trespass Warning encompassed "[a]ll city of Sulphur owned property," and listed the warning as emanating from "Sgt. C. Gremillion, an officer of the Sulphur Police Department."[7] In response to a series of letters from Vincent, Sulphur Police Chief Lewis Coats stated that the no trespass warning was issued "in an attempt to prevent [Vincent] from entering any city owned property where [he] could have come in contact" with those he allegedly threatened.[8] When the District Attorney advised Chief Coats that there was insufficient evidence to pursue any charges against Vincent, Chief Coats—after discussing the matter with Mayor Duncan[9]—sent a letter to Vincent that informed him that the trespass warning had been terminated.[10]

Vincent filed suit against the defendants in the Fourteenth Judicial District Court for the Parish of Calcasieu on December 10, 2012, under 42 U.S.C. § 1983, initially seeking

---

[2] As the parties are familiar with the facts and procedural history as described in the court's previous Memorandum Ruling [Doc. 29], at 1-4, only those pertinent to the current issue before the court will be rehashed here.
[3] Pet [Doc. 1-2], at 5.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Letter from Carol J. Vincent to Lewis Coats, Sulphur Police Chief, Sept. 27, 2012 [Doc. 23-4], at 3; Letter from Lewis Coats, Sulphur Police Chief, to Carol J. Vincent, Oct. 4, 2012 [Doc. 23-4], at 4.
[9] Aff. of Lewis Coats [Doc. 23-2] ¶ 14.
[10] Letter from Lewis Coats to Carol J. Vincent, Oct. 16, 2012 [Doc. 1-2], at 11.

compensatory and exemplary damages for alleged violations of the plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.[11] On January 24, 2013, the defendants removed the case to federal court pursuant to the court's federal question subject matter jurisdiction.[12] On September 10, 2013, the defendants filed the Motion for Summary Judgment Based on Qualified Immunity [Doc. 23] that is presently before the court.[13] Summary judgment was granted on the basis of qualified immunity for all claims except for the plaintiff's procedural due process claims, the plaintiff's municipal liability claims, and the plaintiff's First Amendment claims.[14] Summary judgment was denied for the due process and municipal liability claims, and stayed for the First Amendment claims.[15] After briefing from both parties, the court now rules on the First Amendment claims.

## LAW & ANALYSIS

### I. Summary Judgment Standard

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[11] *See generally* Pet. [Doc. 1-2].
[12] *See* Not. of Removal [Doc. 1], at 1.
[13] Mot. for Summ. J. Based on Qualified Immunity [Doc. 23].
[14] J. [Doc. 30].
[15] *Id.*

*Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

## II.   Qualified Immunity for Plaintiff's First Amendment Claims

42 U.S.C. § 1983 "provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right." *Whittington v. Maxwell*, 455 Fed. Appx. 450, 455-56 (5th Cir. 2011) (citing 42 U.S.C. § 1983). "[Q]ualified immunity—which shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights'—is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 672 (2009) (internal citations omitted).

"Qualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*, 424 Fed. Appx. 382, 386 (5th Cir. 2011) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "When an officer argues that he is entitled to qualified immunity from suit, [the court] first view[s] the evidence 'in the light most favorable to the party asserting the injury' and decide[s] if 'the facts alleged show the officer's conduct violated a constitutional right.'" *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In order to overcome a claim of

qualified immunity, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court, in its discretion, may consider either of the two prongs first. *Id.* (*citing Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### A. Did the Defendants' Actions Violate a Constitutional Right?

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *S.E.I.U., Local 5 v. City of Houston*, 595 F.3d 588, 595 (5th Cir. 2010) (citation omitted). The government does not have unlimited power to regulate private speech on government property. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469.

Claims under the First Amendment undergo a forum-based analysis. *See, e.g., Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 57-58 (5th Cir. 2010). There are three recognized types of forums: (1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums. *Id.* In traditional and designated public forums, reasonable time, place, and manner restrictions are allowed; however, any content-based restriction must be narrowly tailored to serve a compelling government interest. *Pleasant Grove*, 555 U.S. at 469-70 (citations omitted). In limited public and nonpublic forums, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral. *Id.* at 470; and *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citation omitted).

The interior of a police station is a nonpublic forum. *First Def. Legal Aid v. City of Chicago*, 319 F.3d 967, 968 (7th Cir. 2003); *see also Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 231

(2nd Cir. 1996). Courthouses are similarly nonpublic forums. *Huminski v. Corsones*, 396 F.3d 53, 90-91 (2nd Cir. 2005) (citing *U.S. v. Grace*, 461 U.S. 171, 177 (1983)); *see also Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997); *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005); and *U.S. v. Vosburgh*, 59 F.3d 177 (9th Cir. 1995) (unpublished) (citations omitted). City Hall is typically a nonpublic forum. *See Hansen v. Williamson*, 440 F. Supp. 2d 663, 679 (E.D. Mich. 2006) (citing *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 966 (9th Cir. 2002)). However, case law supports that city council meetings are limited public forums. *Wenthold v. City of Farmers Branch, Texas*, No. 3:11-CV-0748-B, 2012 WL 467325, *8 (N.D. Tex. Feb. 14, 2012) (citing *Christian Legal Soc'y Ch. Of the Univ. of Cal., Hastings C. of the L. v. Martinez*, 130 S.Ct. 2971, 2984 n. 11 (2010) (additional citations omitted)). Whether limited or nonpublic, the standard of review for these forums is the same.[16]

The court need not reach the issue of whether or not the Official Notice of Trespass Warning was content neutral because it was not reasonable. A public official's decision to restrict access to a nonpublic forum need not be the most reasonable or the only reasonable limitation to pass constitutional muster. *Cornelius*, 473 U.S. at 808. However, a notice of trespass is more akin to an injunction than a general ordinance, and therefore requires a "somewhat more stringent application of general First Amendment principles." *Huminski*, 396 F.3d at 92 (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 764 (1994) (finding that such notices "carry greater risks of censorship and discriminatory application than . . . general ordinances")).

*Clifton v. City of Denton* only provides limited guidance on this issue. No. 4:06cv472, 2007 WL 2746820 (E.D. Tex. 2007). The original trespass notice in that case banned the plaintiff from all of City Hall, including the common areas. *Id.* at *1. However, on the same day the

---

[16] The parties have not provided enough information to determine whether the city business center is a public, designated, limited, or nonpublic forum, but the designation is largely irrelevant because the notice of trespass does not pass the lower standard of review based on reasonableness, *infra*.

notice was issued, the trespass order was clarified to allow the plaintiff to visit the common areas of City Hall, which allowed the plaintiff to attend city council meetings. *Id.* at *2. In holding that the city's notice of trespass was narrowly tailored, the court in *Clifton* reasoned that the plaintiff had "ample alternatives for communication, including speech in any public area of City Hall (including City Council meetings) and emails and phone calls to . . . City officials." *Id.* at *6. The holding of *Clifton* does not merely rest on the plaintiff's ability to email and phone City officials.

Unlike the plaintiff in *Clifton*, Vincent was not only banned from the private areas of city hall, he was banned from the public areas of city hall, the courthouse, the police station, and the city business center.[17] Vincent was singled out and prohibited from any First Amendment activity he might choose to engage at these locations. Even if the notice of trespass was reasonable with respect to city hall for the protection of a city council member and the mayor, there is no indication that those individuals could be found at the courthouse, the police station, or the city business center. Even for nonpublic forums, these broad restrictions are disfavored. *Huminski*, 396 F.3d at 92-93 (citing *Bd of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (reasoning that "no conceivable governmental interest" would justify an "absolute prohibition of speech" in a nonpublic forum)). Viewing the evidence in the light most favorable to Vincent, there is a genuine dispute as to a material fact over whether his First Amendment rights were violated. Summary judgment in favor of the defendants on this issue would be inappropriate.

---

[17] Official Notice of Trespass Warning [Doc. 23-4].

### B. Was the Right Clearly Established?

The actions of a law enforcement officer violate clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not necessarily required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *James v. Dallas Hous. Auth.*, 526 Fed. Appx. 388, 392 (5th Cir. 2013) (citing *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009)). It is not required that the "very action in question has previously been held unlawful," but the unlawfulness must be apparent in light of pre-existing law. *Anderson*, 483 U.S. at 640 (citations omitted).

Vincent alleges that his First Amendment rights were violated when he was denied the ability to go onto Sulphur property, including city hall, the courthouse, the city business center, and city police department.[18] He also states that his rights were infringed because he was prevented from attending judicial proceedings and city council meetings.[19] Thus, the relevant inquiry is whether a reasonable official would have understood that a blanket prohibition on entering city-owned property after receiving information about a potential threat to city officials would violate Vincent's First Amendment rights.

In 1987, the Supreme Court of the United States thought that it was "obvious" that "no conceivable governmental interest would justify an absolute prohibition of speech" even in a

---

[18] Pl.'s Supp. Mem. in Opp. to Defs.' Mot. for Summ. J. Based on Qualified Immunity Regarding Pl.'s First Amendment Claims [Doc. 34], at 5-6.
[19] *Id.*

8

nonpublic forum. *Bd of Airport Comm'rs,* 482 U.S. at 575. However, in 1989, the Fifth Circuit interpreted *U.S. Postal Service v. Council of Greenburgh Civic Associations* to stand for the proposition that "a complete ban on free expression may be imposed in a non-public forum if the prohibition is reasonable and content-neutral." *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge* (citing *U.S. Postal Service v. Council of Greenburgh Civic Assoc's,* 453 U.S. 114, 132 (1981)). Although *U.S. Postal Service* and *International Society for Krishna Consciousness of New Orleans* both considered laws of general applicability, the juxtaposition of these cases with the Supreme Court's pronouncement in *Board of Airport Commissioners* calls into question whether or not it may ever be considered reasonable to completely ban the First Amendment activities of an individual in a nonpublic forum.

Because it cannot be said that every reasonable officer would have known that banning Vincent from city property after receiving information about a potential threat was unreasonable, the individual defendants are entitled to qualified immunity on this issue. Accordingly,

**IT IS ORDERED** that the individual defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 23] be and hereby is **GRANTED** as to Vincent's First Amendment claims.

### C. Municipal Liability

The plaintiff has also sued the City of Sulphur[20]; the issue of municipal liability has not been reurged in either party's supplemental brief. This ruling adopts much of the same reasoning as this court's previous Memorandum Ruling [Doc. 29] in denying summary judgment on the issue of municipal liability. Municipalities may be held liable under 42 U.S.C. § 1983 for "their *own* illegal acts." *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986) (additional citation omitted)) (emphasis in original).

---

[20] Pet. [Doc. 1-2], at ¶ 9.

"[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Id.* at 167 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted)). The Fifth Circuit has "defined an official policy for purposes of § 1983 liability as '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. Appx. 312, 316 (5th Cir. 2011) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)). "[P]roof that a municipality's . . . authorized decision maker has intentionally deprived a plaintiff of a federally protected right necessarily establishes the municipality's culpability and causation." *Id.* at 317 (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (internal quotation marks omitted)).

The defendants have argued that the claims against the City of Sulphur fail first because there was no underlying constitutional violation.[21] However, the previous discussion regarding the violation of the plaintiff's First Amendment rights disposes of this argument.

The constitutional violation alleged was done pursuant to the decision of a policy-making official—namely, Chief Coats. Several undisputed facts support this conclusion. As to whether Chief Coats is a policymaking official, other courts have stated that the "Chief of Police is the final policy maker with regard to the day-to-day supervision of the police force and the enforcement of state laws and municipal ordinances." *World Wide St. Preachers' Fellowship v. Town of Columbia*, No. 05-513, 2008 U.S. Dist. LEXIS 26929, at *24 (W.D. La. Apr. 3, 2008) (citing LA. REV. STAT. ANN. § 33:423; *St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)).

---

[21] Memo. in Supp. [Doc. 23-1], at 31.

Several facts also support the finding that the police chief's decisions herein, as policymaker, led to the deprivation of Vincent's First Amendment rights. First, it is noteworthy that the trespass warning that was issued to Vincent was on a pre-printed form, in which an officer need only fill in the blanks, supporting the inference that warnings of this type are issued with regularity.[22] This is not necessarily dispositive, as there are, as previously noted, many legitimate conceivable implementations of Louisiana Revised Statute § 14:63.3 which would not amount to violations of the First Amendment. However, Officer Gremillion informed Chief Coats on August 9, 2012 that he had issued Vincent a no trespass warning that banned him from all city property for an indeterminate period of time.[23] Chief Coats took no action to lift or narrow the order at that time.

On October 4, 2012, in response to the plaintiff's letters, Chief Coats wrote to the plaintiff "and explained to him that he was issued the trespass warning due to an active investigation . . . into verbal threats he had made against City of Sulphur Officials."[24] It was only after the District Attorney informed Chief Coats that "there was insufficient evidence to pursue any charges against Mr. Vincent," and after obtaining Mayor Duncan's approval, that the no trespass order was lifted.[25] As the no trespass warning was issued pursuant to the decision of a policy-making official, the claims against the municipality need not proceed under a failure to train theory. The Fifth Circuit has stated that "[a] pattern of conduct is necessary only where the municipal actors are *not* policymakers. Alternatively, it may be shown that a *final policymaker* took a single unconstitutional action." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)

---

[22] Official Notice of Trespass Warning [Doc. 23-4].
[23] Aff. of Lewis Coats [Doc. 23-3] ¶ 3.
[24] Aff. of Lewis Coats [Doc. 23-3] ¶ 8.
[25] Aff. of Lewis Coats [Doc. 23-3] ¶¶ 13-14.

(citation omitted). For all of the foregoing reasons, a grant of summary judgment to the defendants on the issue of municipal liability is not warranted at this time. Accordingly,

**IT IS ORDERED** that the defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 23] as to the plaintiff's claims based on municipal liability under 42 U.S.C. § 1983 be and hereby is **DENIED**.

## CONCLUSION

**IT IS ORDERED** that the individual defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 23] be and hereby is **GRANTED** as to Vincent's First Amendment claims.

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 23] as to the plaintiff's claims based on municipal liability under 42 U.S.C. § 1983 be and hereby is **DENIED**.

Lake Charles, Louisiana, this 21 day of October, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE